IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, and PROGRESSIVE DIRECT INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 9:23-cv-00737-DCN |
| vs. | ) ) | **ORDER** |
| DANIEL GEOFFROY,[1] | ) ) ) | |
| Defendant. | ) ) | |

The following matter is before the court on plaintiffs Progressive Direct Insurance Company ("Progressive Direct") and Progressive Northern Insurance Company's ("Progressive Northern") (together, "Progressive") motion for default judgment, ECF No. 9, and motion to strike, ECF No. 14; and defendant Daniel Geoffroy's ("Geoffroy") motion to set aside default, ECF No. 10. For the reasons set forth below, the court denies the motion for default judgment, grants the motion to set aside default, and denies the motion to strike.

## I.  BACKGROUND

This case arises from an insurance coverage dispute regarding a motor vehicle accident which occurred on November 5, 2021 (the "Accident"). ECF No. 1, Compl. ¶¶ 15–32. Prior to the accident, Audrey Geoffroy ("Audrey")—defendant Geoffroy's wife—had an insurance policy with Progressive Northern (the "Auto Policy"), which

---

[1] The docket indicates that plaintiff Daniel Geoffroy's last name is "Geoffrey" but the filings in the instant case spell his name as "Geoffroy." The court will follow the filings in the case and refer to the defendant as "Geoffroy."

1

included coverage for five vehicles including a 2016 GMC Sierra (the "GMC") and which listed Daniel Geoffroy as a driver and resident relative. Id. ¶¶ 7–12; see also ECF No. 1-1. The Auto Policy did not include uninsured motorist ("UIM") coverage because upon the Auto Policy's inception on September 28, 2018, Audrey Geoffroy, the named insured, signed a UIM offer form and expressly rejected UIM coverage. Id.; see also ECF No. 1-2. Geoffroy also had a Progressive Direct motor home insurance policy (the "Motor Home Policy"), which listed one insured vehicle, a 1993 Winnebago Adventurer. Id. ¶¶ 13–18; see also ECF No. 1-3. The Motor Home Policy included a provision indicating that Progressive Direct's total limit of liability on an automobile that is not covered by the policy "will be the lesser of the limit of liability listed on the declarations page or the amount of Uninsured Motorist Coverage or Underinsured Motorist Coverage, as the case may be, on the vehicle involved in the accident." Id. ¶ 14.

Geoffroy filed a complaint against Angel Landscaping, LLC, and Jorge Angel Castro Ramirez in South Carolina state court in relation to the Accident. Id. ¶¶ 15–20; see also Geoffroy v. Angel Landscaping, LLC, Case No. 2022-CP-0701172 (Beaufort Cnty. Ct. C.P. June 27, 2022). Geoffroy was driving the GMC at the time of the Accident, and Geoffroy has since made claims for UIM coverage under the Auto Policy and the Motor Home Policy in relation to the Accident. Id. ¶¶ 17, 20. Progressive now seeks a declaration that the Auto Policy provided no UIM coverage for the Accident and seeks a declaration that because the Auto Policy included no UIM coverage, the Motor Home Policy also provides no UIM coverage. Id. ¶¶ 21–32.

On February 23, 2023, Progressive filed the complaint pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and diversity jurisdiction, 28 U.S.C.

§ 1332.[2]  ECF No. 1, Compl. ¶¶ 1–5.  On July 21, 2023, Progressive filed a request for entry of default judgment and an affidavit in support, ECF Nos. 6; 7, which the clerk of court entered on July 23, 2023, ECF No. 8.  On July 28, 2023, Progressive filed a motion for default judgment, ECF No. 9, but on August 7, 2023, Geoffroy filed a motion to set aside default.  ECF No. 10.  On August 18, 2023, Progressive filed a response in opposition to Geoffroy's motion to set aside default, ECF No. 11, to which Geoffroy replied on August 24, 2023, ECF No. 13.  On August 31, 2023, Progressive filed a motion to strike Geoffroy's reply, ECF No. 14, to which Geoffroy responded in opposition on September 14, 2023, ECF No. 16.  As such, the motions have been fully briefed and are now ripe for review.

## II.  STANDARD

### A.  Motion for Default Judgment

Securing a default judgment is a two-step process.  First, upon a defendant's failure to plead or otherwise defend within the permissible period for response, a plaintiff must file a motion requesting the clerk of court for an entry of default.  Fed. R. Civ. P. 55(a).  Second, where the plaintiff's claim is not for sum certain, he or she must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  After a court has received an application, Rule 55 gives it great discretion in determining whether to enter or effectuate judgment, including the power to: "[]conduct an accounting; []determine the amount of

---

[2] There is complete diversity of citizenship:  Progressive Northern is incorporated in Wisconsin with its principal place of business in Wisconsin, Progressive Direct is incorporated in Ohio with its principal place of business in Ohio, and Geoffroy is a citizen and resident of South Carolina.  Compl. ¶¶ 1–3.  The amount in controversy purportedly exceeds $75,000.  Id. ¶ 5.  Thus, Progressive contends that the court has jurisdiction to hear this matter under 28 U.S.C. § 1332.  Id.

3

damages; []establish the truth of any allegation by evidence; or []investigate any other matter." Id.; see also United States v. Ragin, 113 F.3d 1233 (4th Cir. 1997).

Once the clerk has entered default against a defendant, the court, in considering the plaintiff's application for default judgment, accepts a plaintiff's well-pleaded factual allegations as true. See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defendant is not held to have admitted conclusions of law, Ryan, 253 F.3d at 780 (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)), or allegations that concern only damages, Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944)).

Thus, a court considering default judgment must still determine if the established factual allegations constitute a legitimate cause of action and provide a sufficient basis the relief sought. See Ryan, 253 F.3d at 780 ("The court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought in this action."); see also Silvers v. Iredell Cnty. Dep't of Soc. Servs., 2016 WL 427953, at *4 (W.D.N.C. Feb. 3, 2016), aff'd, 669 F. App'x 182 (4th Cir. 2016). "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." Harris v. Blue Ridge Health Servs., Inc., 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted). If the court determines that the allegations entitle the plaintiff to relief, it must then determine the appropriate amount of damages. Id.

### B. Motion to Set Aside Default Judgment

Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). This "good cause" standard is liberally construed "in order to provide relief from the onerous consequences of defaults." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); see also Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits."); Saunders v. Metro. Prop. Mgmt., Inc., 806 F. App'x 165, 168 (4th Cir. 2020) ("[T]he law disfavors disposition by default and accords preference to resolving a case on its merits."). The decision to set aside an entry of default is "committed to the sound discretion of the trial court." Lolatchy, 816 F.2d at 954.

The Fourth Circuit has identified several factors that a court should consider when determining whether to set aside an entry of default: "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 204–05 (4th Cir. 2006). When considering these factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). "Generally, a default should be set aside where the moving party acts with

reasonable promptness and alleges a meritorious defense." Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967).

### C. Motion to Strike

Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citations omitted); see also Brown v. Inst. For Fam. Centered Servs., Inc., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are . . . granted only for egregious violations."). When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." Clark v. Milam, 152 F.R.D. 66, 71 (S.D.W. Va. 1993). Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings. Fed. R. Civ. P. 12(f). According to Rule 7, a document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a).

"[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the Court." Barnes v. District of Columbia, 289 F.R.D. 1, 6 (D.D.C. 2012)

6

(citations omitted).  "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money."  Gibson v. Confie Ins. Grp. Holdings, Inc., 2017 WL 2936219, at *12 (D.S.C. July 10, 2017).  "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion: "decisions that are reasonable, that is, not arbitrary, will not be overturned."  Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007) (quoting Seay v. TVA, 339 F.3d 454, 480 (6th Cir. 2003)).

### III.  DISCUSSION

Though there are three motions pending before the court, each of them primarily focuses on the same issue: whether to enter a default judgment in favor of Progressive.  As such, the court begins by examining Progressive's motion for default judgment, ECF No. 9, and Geoffroy's motion to set aside default judgment, ECF No. 10, before considering Progressive's motion to strike, ECF No. 14.

**A.  Default Judgment**

Progressive's motion to enter default explains that Geoffroy was properly served, and he failed to respond in a timely manner; moreover, Progressive emphasizes that the evidence before the court clearly shows that Progressive owes Geoffroy no UIM coverage arising out of the Accident.  ECF No. 9-1 at 4–6.  Geoffroy's motion to set aside default asks the court to do the opposite; Geoffroy's counsel explains that he forgot to print and sign the form and that his inadvertence should not be imputed onto his client.  ECF No. 10 at 1.  Additionally, Geoffroy believes he has two meritorious defenses to the declaratory judgment action: first, neither he nor his wife received any advice or

7

instruction from Progressive regarding UIM coverage, and second, Audrey not Geoffroy signed the form. Id. at 2–3.

In response to Geoffroy's motion, Progressive contends that because it personally served Geoffroy, he was personally responsible for the default notwithstanding his counsel's failures. ECF No. 11 at 3. Progressive also contends that no meritorious defense exists to this action because the argument that Audrey signed the paper, rather than Geoffroy, is irrelevant, as she is the named insured on the Auto Policy and thereby possessed the ability to decline UIM coverage under the policy. Id. at 3–4. In reply to Progressive's response in opposition, Geoffroy sets forth his argument in reference to the Payne factors and provides affidavits from Geoffroy and his wife. See ECF No. 13 at 2–5; ECF No. 13-1, Geoffroy Aff.; ECF No. 13-2, Audrey Aff. First, Geoffroy reiterates his argument that Progressive provided no meaningful offer or explanation of UIM coverage at the time of application and issuance of the Auto Policy, which alone constitutes a meritorious defense. Id. at 3. Second, Geoffroy contends that he exercised reasonable promptness upon learning of the default—Geoffroy's counsel received a letter from Progressive's counsel dated July 28, 2023, ECF No. 13-3, which he promptly responded to upon his return to the office on July 31, 2023.[3] Id. Third, Geoffroy explains he was out of town at the time the process server attempted to serve him and further describes that "the Summons in this matter was left in the bedroom of Geoffroy's college aged son, Garrison Geoffroy, while he was asleep, without any explanation of

---

[3] Geoffroy's counsel avers he was out of the country on vacation from July 23–30, 2023. ECF No. 13 at 3. He also writes that he promptly responded to the entry of default on January 31, 2023, which the court interprets to be a typographical error that should indicate July 31, 2023, by reference to the filed brief and the filings in this matter. Id.

what was being delivered or why." Id. at 4. Thus, Geoffroy implies that service was defective such that he bears limited personal responsibility for the default. Id. Fourth, Geoffroy has no history of dilatory action in this court nor any other judicial forum and Progressive will suffer no prejudice by having this coverage dispute determined on its merits. Id. at 5. Fifth, Geoffroy submits that less drastic remedies are available. Id.

As many courts have long held, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." Tolson, 411 F.2d at 130. When considering the Payne factors, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc., 616 F.3d at 417. The court finds that Geoffroy has made a showing that many of the Payne factors weigh in his favor such that this matter should be disposed of on its merits. 439 F.3d at 204–05.

First, upon learning of the default on or around July 28, 2023, Geoffroy filed a motion to set aside default around a week later August 7, 2023, which weighs in favor of finding him to have acted with reasonable promptness. While there was certainly delay in filing any responsive pleading after the date of service, courts also look to when the defaulting party responded to the entry of default and opposing party's motion for default judgment. See Prince Payne Enters. v. Tigua Enters., 2019 WL 1058089, at *3 (D.S.C. Mar. 6, 2019). "District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." Reg'l Med. Ctr. of Orangeburg v.

Salem Servs. Grp., LLC, 2020 WL 1956515, at *3 (D.S.C. Apr. 23, 2020).  Thus, this factor weighs in favor of setting aside default.

Second, evaluation of Geoffroy's personal responsibility for default also weighs in favor of setting aside default, notwithstanding the perplexing circumstances of the alleged service.  "[T]o obtain relief from a judgment under Rule 60(b)(1), a party must show the existence of mistake, inadvertence, surprise or excusable neglect as a ground for relief." Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987).  Deciding that question requires courts to "focus on the source of the default" and "distinguish between the fault of [the defaulting party]'s attorney and the fault, if any, of [the defaulting party] itself." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988).  Geoffroy plausibly states that he assumed that his retained counsel—with whom Progressive was well acquainted—would be provided with a courtesy copy of the service, and Geoffroy's counsel also plausibly states that he "simply forgot to print and sign the proposed acceptance of service form and return it to Progressive counsel," which falls within the category of excusable neglect.  ECF No. 10 at 1; ECF No. 13 at 4.  The court need not reach the issue of the questionable service of process to find that this factor weighs in favor of setting aside default.

Third and fourth, as Geoffroy properly identifies, he has no history of dilatory actions and there are certainly less drastic sanctions.  ECF No. 13 at 5.  Finding that four of the five factors weigh in favor of setting aside default, the court finally turns to the question of whether Geoffroy has plausibly stated a meritorious defense.

Fifth, it is likely that Geoffroy has stated facts which constitute a meritorious defense sufficient to set aside default, though this is the weakest factor for him.  "A

meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc., 843 F.2d at 812; Caribbean Indus. Prod., LLC v. Allen Filtration, LLC, 2018 WL 398486, at *3 (D.S.C. Jan. 12, 2018). "[T]he mere assertion of facts constituting a meritorious defense in a pleading satisfies the requirement of showing a meritorious defense." Blackwood v. Georgetown Hosp. Sys., 2013 WL 1342523, at *1 (D.S.C. Apr. 2, 2013) (internal quotations omitted) (citing Cent. Operating Co. v. Util. Workers of Am., 491 F.2d 245, 253 n.8 (4th Cir. 1974) ("[A] party is not required to establish a meritorious defense by a preponderance of the evidence.")).

To meet this factor, Geoffroy asserts that "it is conceivable that no meaningful offer or explanation of underinsured coverage was made at the time of application and issuance of the [Auto Policy and Motor Home Policy] at issue in this matter." ECF No. 10 at 2–3; ECF No. 13 at 3. However, Geoffroy cites no caselaw in support of his argument. See id. Progressive focuses on the fact that Audrey signed the form rejecting UIM coverage, which means that Progressive is entitled to a conclusive presumption that there was an informed, knowing rejection of coverage. ECF No. 11 at 4 (citing S.C. Code Ann. § 38-77-350(B); Nationwide Mut. Ins. Co. v. Powell, 292 F.3d 201, 206 (4th Cir. 2002)). Thus, the court turns to caselaw to determine whether Geoffroy's facts, if true, constitute a valid defense or counterclaim to Progressive's declaratory judgment action.

The South Carolina Supreme Court has formulated a four-element test for determining whether an insurer has complied with its duty to offer optional coverages:

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional

> coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

Nationwide Mut. Ins. Co. v. Powell, 292 F.3d 201, 204 (4th Cir. 2002) (quoting State Farm Mut. Auto. Ins. Co. v. Wannamaker, 354 S.E.2d 555, 556 (S.C. 1987)).  This amounts to a requirement that, to be valid, an offer of UIM coverage must be "a meaningful one."  Traynum v. Scavens, 786 S.E.2d 115, 202 (S.C. 2016) (quoting Wannamaker, 354 S.E.2d at 557).  The insurer's failure to satisfy this test nullifies any rejection of UIM coverage by the insured, see Hanover Ins. v. Horace Mann Ins., 389 S.E.2d 657, 659 (S.C. 1990), and requires that the policy "be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured," Butler v. Unisun Ins, 475 S.E.2d 758, 760 (S.C. 1996).

A statute passed in response to Wannamaker provides guidelines for the forms that insurers must use to offer UIM coverage to "new applicants."  See Rabb v. Catawba Ins., 528 S.E.2d 693, 695 (S.C. Ct. App. 200) (explaining that S.C. Code Ann. § 38-77-350 passed in response to Wannamaker).  Subsection (B) of this statute provides:

> If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

S.C. Code Ann. § 38-77-350(B).  If an insurer makes a statutorily compliant offer, consideration of Wannamaker is unnecessary.  Traynum, 786 S.E.2d at 121; see also Grinnell Corp. v. Wood, 698 S.E.2d 796, 799 (S.C. 2010) (noting that if an insurer offers UIM coverage on a form that satisfies the requirements of § 38-77-350(A), then

12

subsection (B) provides a conclusive presumption in favor of the insurer that the insured made a knowing waiver of the option to purchase additional coverage).

Given the foregoing, Progressive argues that Audrey is the only named insured on the Auto Policy, and she admits that she signed the form rejecting UIM coverage, which means that Progressive is entitled to a "conclusive presumption" under section 38-77-350(B) that there was an informed, knowing rejection of coverage. ECF No. 11 at 4. Progressive included a copy of this signed form as an attachment to its complaint. ECF No. 1-2. Yet in her declaration, Audrey specifies that though she signed the forms, "[n]obody with Progressive has ever provided me with any explanation about underinsured motorist coverage, nor its importance, nor asked me whether I wanted or needed this type of coverage" and she said at the time she signed the forms "Progressive had already earlier pledged to me by telephone that we were covered and they would be sending us forms to sign." Audrey Aff. ¶¶ 9–10. She further contends that, "[i]f Progressive had adequately informed me and my husband of the details and importance related to underinsured motorist coverage with respect to our personal automobiles, we would have insisted that such coverage be added to all of our policies covering all of the vehicles in our household." Id. ¶ 15. To reiterate, "to warrant relief, a party is not required to establish a meritorious defense by a preponderance of the evidence," because the movant seeking to set aside default only seeks a trial on the merits, not a judgment in his favor. Cent. Operating Co., 491 F.2d at 252 n.8. Thus, Geoffroy's defense is that no meaningful offer or explanation of UIM coverage was made at the time of application, and issuance of the Auto Policy and Motor Home Policy at issue in this matter which, in turn, implies that Audrey's rejection of UIM coverage is nullified. See ECF No. 10 at 2–

13

3; ECF No. 13 at 3; Hanover Ins. Co., 389 S.E.2d at 659.  Admittedly, this is a longshot argument, but it is sufficient to warrant setting aside default and allowing the case to proceed to its merits, particularly considering clear precedent stating that "[a]ny doubts about whether to grant a default judgment should be resolved in favor of deciding a case on the merits." Brock v. Bowman, 582 F. App'x 260, 261 (4th Cir. 2014) (citing Tolson, 411 F.2d at 130).

### B. Motion to Strike

Finally, the court turns to Progressive's motion to strike Geoffroy's entire reply brief or, at a minimum, his references to the purported trespass by Progressive's hired process server.  ECF No. 14.  Progressive first explains that because Geoffroy raised the argument of the process server's alleged trespass for the first time in his reply brief, it was abandoned.  Id. at 1.  Moreover, Progressive contends that Geoffroy's suggestion that "the process server br[oke] into his home to leave the papers on his son's bedside table while he slept" is "as implausible as it is wildly improper." Id. at 2.  Geoffroy's and Audrey's affidavits, which indicate as much, cannot support such an accusation since they both admit they were out of town at the time, and their declarations are, thereby, premised on "hearsay or speculative testimony." Id.

Progressive also attaches an affidavit from the process server in question who indicates that Geoffroy's house was under construction and that one of the workers invited him inside where he was able to speak with Geoffroy's son.  See ECF No. 14-1, Johnson Aff. ¶ 3.  Geoffroy's son thereafter agreed to take service of process outside the home on his father's behalf.  Id.  Thus, Progressive requests that the court strike this accusation, if not Geoffroy's entire reply brief, since Progressive contends Geoffroy has

14

still failed to establish a meritorious defense. Id. at 3. In response to the motion to strike, Geoffroy's counsel avers that all representations were made in good faith and with due haste and that he has been unable to obtain an affidavit from Geoffroy's son due to conflicts with his academic schedule. ECF No. 14 at 1–2. In any event, Geoffroy argues that ignoring the question of service of process, "the issue at hand is whether relief from entry of default should be granted under the circumstances in this action," for which he reiterates his arguments made in his motion, response in opposition, and reply to conclude that relief from entry of default should be granted. Id.

Generally, "new arguments cannot be raised in a reply brief" before the district court. United States v. Smalls, 720 F.3d 193, 197 (4th Cir. 2013). A contrary rule runs the risk of depriving a nonmovant an opportunity to respond. De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022). But, "a district court may consider an argument raised for the first time on reply under appropriate circumstances." Id. Two such circumstances are: first, whether the untimely argument may be "intimately related" to the original grounds for the motion, which would allow a district court to overlook waiver, and second, whether a non-movant had the opportunity to contest an untimely argument in a sur-reply which supports a district court's decision to consider the untimely argument. Id. Both circumstances apply here. First, the issue of service arose in Geoffroy's initial motion to set aside default. See ECF No. 10 at 1–2. Second, Progressive has since filed a motion to strike the question of the trespassing process server in which it opines, inter alia, on the dearth of any non-hearsay evidence to support such an allegation and for which Progressive provided the affidavit of its process server contradicting Geoffroy's account. See Johnson Aff. ¶ 3. This filing serves the same

15

purpose as a sur-reply objecting to an argument first raised in a reply brief. See id. The court begins by considering Progressive's request that the court strike Geoffroy's entire reply brief before considering its more limited request to strike the allegations of trespass by the process server.

First, the court denies Progressive's request that the court strike Geoffroy's entire reply brief, which briefly references the alleged trespass but primarily focuses on analysis of the Payne factors. See generally ECF No. 13. To strike the entire brief would unfairly disfavor Geoffroy in arguments entirely unrelated to service of process. See id. To reiterate, motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc., 252 F.3d at 347. Thus, the court denies the motion to strike Geoffroy's entire reply brief.

Second, regarding the motion to strike Geoffroy's allegations of defective process, the court finds that it need not resolve such questions at this time, certainly not through the drastic remedy of a motion to strike. See id. The court resolved the question of default judgment without relying on the issue of service. Thus, this matter can be reserved for later resolution, should it become relevant, but the court need not resolve it now. The court also denies the motion to strike the implication of trespass by Progressive's process server and expressly states that its conclusions regarding the pending motion for default judgment and motion to set aside default judgment are not premised on the question of service.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** the motion for default judgment, **GRANTS** the motion to set aside default judgment, and **DENIES** the motion to strike.

**AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**October 4, 2023**
**Charleston, South Carolina**